

# THE ATTORNEY GENERAL

## OF TEXAS

**PRICE DANIEL**
ATTORNEY GENERAL

AUSTIN, TEXAS

October 11, 1949

Hon. Wayne L. Hartman
County Attorney
DeWitt County
Cuero, Texas

Opinion No. V-932.

Re: Applicability of the
"private-parochial
clause" in S.B. No.
116, 51st Legislature,
when the district has
been enlarged or re-
ceives scholastics un-
der contract.

Dear Sir:

Your letter inquires the effect on the profes-
sional unit eligibility of a "private-parochial dis-
trict" of enlargement of the district or receipt by the
district of contracted scholastics.

"Professional units" are a measure of the
State aid to be made available to a public school dis-
trict, and "private-parochial districts" are those pub-
lic school districts mentioned in the fifth paragraph
of Section 1, Article III, Senate Bill No. 116, Acts
51st Legislature 1949, which reads:

"Provided further, that for the
school year 1949-1950, and for such
school year only, a school district,
containing a private or parochial school,
which received salary aid from the State
Equalization Fund for the 1948-1949
school year and was eligible for more
teachers for the 1948-1949 school year
than it is under the general provi-
sions of this Act for the 1949-1950
school year, shall be approved for pro-
fessional units in a number not to ex-
ceed its 1948-1949 eligibility, pro-
vided that such professional unit eli-
gibility shall not exceed one classroom
teacher unit for each twenty (20) pupils

in average daily attendance in the
public schools of the district for the
1948-1949 school year."

Pertinent to consideration of this problem is
the third paragraph of the same section of Article III,
which provides in part:

". . . any school district which
is not a dormant district . . . may, sub-
ject to the approval of the boards of
trustees of the districts concerned, the
County Superintendent, and the State Com-
missioner of Education, contract for a
period of one year to transfer its entire
scholastic enrollment . . . to a contigu-
ous district, . . . the combined daily
average attendance shall be used in de-
termining the number of professional u-
nits for which the receiving district
shall be eligible."

Also pertinent to the question is this lan-
guage in the first paragraph of the same section of Ar-
ticle III:

". . . where a school district is
consolidated or contracted with another
district, or where a school district or
part of a school district is annexed to
another district or districts. . . or
where for any reason there is a marked
increase or decrease in the attendance
of any school district, adjustments in
professional allotments shall be made by
the State Commissioner of Education."

All of the provisions of this section, taken
together, are a comprehensive basis for determination
of the professional units to be allowed each school dis-
trict under the Foundation School Program of 1949, and
the quoted provisions must be viewed as forming but
parts of a comprehensive scheme, no part of which is
designed to penalize any type of school district in re-
lation to other districts under the program.

Does the above language of the fifth para-
graph, "a school district, containing a private or pa-
rochial school, which received salary aid from the State

Equalization Fund for the 1948-1949 school year," have application only to that exact geographical district which existed in the 1948-1949 school year? We think not. The act does not categorically so state. We feel it reasonable to view this language as contemplating that school district which received salary aid last year and now contains a private or parochial school, irrespective of incidental alterations in its geographic limits or its scholastic load. Being that specific type of district contemplated by the fifth paragraph, this "private-parochial district" may have as many professional units this school year as it had last year, provided, of course, that this eligibility does not exceed one classroom teacher unit for each twenty pupils in average daily attendance last year as the act specifies.

If this "private-parochial district" has received the scholastics of a contiguous district under a proper transfer contract, the district also comes within the provisions of the third paragraph of Section 1, whereupon its professional unit allocation can be predicated on the combined average daily attendance. The Act does not provide that this district may combine its professional unit eligibility under the "private-parochial clause", on the one hand, with the average daily attendance from the contracted district, on the other hand; but we hold that the presence of a private or parochial school in the district does not deprive the district of its eligibility for professional units based on the combined average daily attendance which follows a proper transfer contract.

Finally there remains to be considered that broad general power vested in the State Commissioner of Education by the first paragraph of Section 1; namely, he shall adjust professional unit eligibilities in accordance with the equities presented. If the district in question feels its professional unit allotment is inadequate under either the fifth paragraph or the third paragraph of Section 1, the district can apply to the State Commissioner of Education for such adjustment in its professional allotment as the Commissioner finds warranted by the specific alteration in the attendance of the district found "for any reason" to exist.

## SUMMARY

Under the provisions of Section 1 a school district which contains a private or parochial school and received salary aid from the State Equalization Fund for the 1948-1949 school year may have the professional units for which it was eligible in that school year despite a subsequent annexation or contracted transfer of scholastics. A school district which has received scholastics under a proper contract of transfer may have professional units based upon the combined average daily attendance regardless of the fact that the district also contains a private or parochial school and received salary aid from the State Equalization Fund last year.

A school district which for any reason has experienced a marked change in its scholastic attendance may apply to the State Commissioner of Education for such adjustments in its professional unit allotments as the Commissioner may find warranted by the specific circumstances presented.

Very truly yours,

ATTORNEY GENERAL OF TEXAS

By _David B. Irons_
David B. Irons
Administrative Assistant

DBI:eb

APPROVED:

_Joe R. Greenhill_

FIRST ASSISTANT
ATTORNEY GENERAL